IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


UNITED STATES OF AMERICA,

               Plaintiff,

     v.

ARTURO CERVANTES-VALENCIA,

               Defendant.

No. 03:11-cr-00326-HZ-1

OPINION


S. Amanda Marshall
United States Attorney
District of Oregon
Ryan W. Bounds
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

       Attorneys for Plaintiff

Ruben L. Iñiguez
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

       Attorney for Defendant


1 - OPINION

HERNANDEZ, District Judge:

On August 16, 2011, a federal grand jury indicted Defendant on one count of illegal reentry in violation of 8 U.S.C. § 1326(a). Defendant moves to dismiss the indictment on the basis that the underlying removal proceedings violated his due process rights. Defendant also moves to vacate the prior removal orders and direct the immigration court to reconsider his eligibility for relief.

Oral argument on this motion was held March 30, 2012. I dismissed the indictment that same day [#26]. My reasons for the dismissal follow.

## BACKGROUND

In 1989, Defendant became a lawful permanent resident of the United States.

On December 9, 1996, at the age of 24, Defendant pleaded guilty to Assault in the Fourth Degree (Or. Rev. Stat. [hereinafter O.R.S.] § 163.160), a Class A misdemeanor, and Possession of a Controlled Substance (O.R.S. § 475.992),[1] a felony.

On December 19, 1997, the Immigration and Naturalization Service served Defendant with a Notice to Appear for removal proceedings. The basis for the removal was his conviction for possession of a controlled substance. Defendant requested an immediate removal hearing and, prior to that hearing, he signed a form titled "Request for Prompt Removal."

Defendant was not represented by counsel at the group deportation hearing. After briefly addressing Defendant individually, the Immigration Judge ("IJ") accepted his stipulated removal. Defendant was ordered removed from the United States on January 13, 1998.

Less than two weeks later, Defendant was apprehended attempting to return to the United States. He was charged in the District of Arizona with Illegal Reentry. His January 13, 1998 removal order was reinstated on January 28, 1998. Pursuant to a plea agreement, he served an

---

[1] Renumbered as O.R.S. § 475.840.

eight-month sentence.  After completing his sentence, Defendant was removed on October 23,

1998, pursuant to the January 28, 1998 reinstated removal order.  Less than three months after

his October 1998 removal, Defendant was apprehended in The Dalles, Oregon and arrested on

new offenses as well as for violating his probation  stemming from this December 9, 1996

sentence.  Defendant's original January 13, 1998 removal order was reinstated again on

September 9, 1999, and he was removed a third time from the United States on September 10,

1999.

    Defendant was found in the United States on July 8, 2011, following his arrest in

Clackamas County for one count of Possession of Methamphetamine and two counts of Felon in

Possession of a Firearm.  The present indictment charges him with having previously been

arrested and deported from the United States on September 10, 1999, and knowingly and

unlawfully re-entering the United States without consent, in violation of 8 U.S.C. § 1326(a).

## STANDARDS

    Under 8 U.S.C. § 1326(a), an alien is criminally liable if found in the United States after

he or she "has been denied admission, excluded, deported, or removed," without  the Attorney

General's consent.  However, a defendant may collaterally attack an underlying removal order if

the defendant shows: (1) he or she exhausted "any administrative remedies that may have been

available to seek relief against the order"; (2) "the deportation proceedings at which the order

was issued improperly deprived the alien of the opportunity for judicial review"; and (3) "the

entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).

    The exhaustion requirement, 8 U.S.C. § 1326(d)(1), bars a defendant from collaterally

attacking a past removal order if he or she "validly waived the right to appeal that order during

the deportation proceedings."  United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001)

(citations omitted). "The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings." United States v. Ramos, 623 F.3d 672, 680 (9th Cir. 2010) (citing United States v. Lopez-Vasquez, 1 F.3d 751, 753 (9th Cir. 1993)). The court must "indulge every reasonable presumption against waiver" and "focus[] on whether [the defendant] *personally* made a considered and intelligent waiver of his appeal." Ramos, 623 F.3d at 680 (internal quotations omitted). The government must prove valid waiver with clear and convincing evidence. United States v. Reyes-Bonilla, 671 F.3d 1036, 1043 (9th Cir. 2012). "[W]here the government introduces official records which on their face show a valid waiver of rights in connection with a deportation proceeding, the burden shifts to the defendant to come forward with evidence tending to prove the waiver was invalid." United States v. Galicia–Gonzalez, 997 F.2d 602, 604 (9th Cir. 1993). However, the exhaustion requirement does not serve to bar a collateral attack "when the waiver of right to an administrative appeal did not comport with due process." Muro-Inclan, 249 F.3d at 1183–84. Due process requires the waiver to be both "considered and intelligent." Id.

An IJ has a "mandatory" duty to inform an alien of his or her right to "apply for relief from removal." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1050 (9th Cir. 2004) (quoting Muro-Inclan, 249 F.3d at 1183). "Failure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceeding." Id. (quoting Muro-Inclan, 249 F.3d at 1183). A waiver of appeal cannot be considered and intelligent "when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the IJ fails to 'advise the alien of this possibility and give him the opportunity to develop the issue.'" Id. (quoting Muro-Inclan, 249 F.3d at 1182). An IJ's failure to inform an alien of his or her "eligibil[ity] for a fast-track voluntary departure in lieu of removal" violates

due process, rendering a waiver invalid.  United States v. Ortiz-Lopez, 385 F.3d 1202, 1204 (9th Cir. 2004) (citing Ubaldo-Figueroa, 364 F.3d at 1050); see also United States v. Melendez-Castro, 671 F.3d 950, 953–54 (9th Cir. 2012) (finding a waiver "neither considered nor intelligent" where the defendant "was not meaningfully advised of his right to seek voluntary departure").

If the exhaustion requirement is satisfied because the IJ failed to inform the defendant "of his or her eligibility for relief from removal," then the second requirement, deprivation of the opportunity for judicial review, is satisfied as well.  See Ramos, 623 F.3d at 681–82; see also Reyes-Bonilla, 671 F3d. at 1043 ("If [the defendant] did not validly waive his right of appeal, the first two requirements under § 1326(d) will be satisfied."); Melendez-Castro, 671 F.3d at 954.

The third requirement, fundamental unfairness, is established if an "alien's 'due process rights were violated by defects in the underlying deportation proceeding,' and if 'he suffered prejudice as a result of the defects.'"  Ramos, 623 F.3d at 680 (quoting United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004)).  A failure to inform the alien of his or her eligibility for relief from removal "is a denial of due process."  Ubaldo-Figueroa, 364 F.3d at 1050. In order to demonstrate prejudice, a defendant "need not conclusively demonstrate that he or she would have received relief . . . but must show only that there were 'plausible grounds for relief.'" Ramos, 623 F.3d at 684 (quoting United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003)).  However, "if the defendant is barred from receiving relief, his claim is not plausible."  Id. (internal quotations omitted).

/ / /

5 - OPINION

DISCUSSION

Defendant moves this Court to dismiss the indictment because he contends the removal order forming the basis for the indictment violated his due process rights.  Defendant argues that he was denied due process because (1) during his 1998 removal hearing, the IJ failed to inform him of his eligibility for voluntary departure;  (2) during his 1998 removal hearing, the IJ represented that Defendant would be informed if there was a basis upon which to seek voluntary departure and the IJ failed to do this; and (3) a signed stipulated removal form does not act as valid waiver because it was given without knowledge of his eligibility for voluntary departure. Defendant also argues he suffered prejudice because it is plausible he would have been granted voluntary departure.  The Government argues that the aforementioned waivers statutorily bar Defendant from collaterally attacking the underlying removal order.  Alternatively, the Government argues Defendant's 1998 plea agreement  precludes this collateral attack.

Defendant's indictment is based on the September 9, 1999 reinstatement of the January 13, 1998 removal order.  Defendant challenges the January 13, 1998 removal order as invalid. "[W]hen the government relies upon a reinstatement as a basis for a reentry prosecution, due process requires that the defendant have an opportunity to attack the validity of the underlying removal proceeding."  United States v. Arias-Ordonez, 597 F.3d 972, 981 (9th Cir. 2010). ("the government [can] not launder the tainted removal by reinstating it. . . .  [A] valid reinstatement of a invalid removal order cannot transform the prior order into a valid predicate for an illegal reentry conviction.").  As the Arias-Ordonez court explained,  "a successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in criminal proceedings for illegal reentry."  Id. at 982.  Here, Defendant challenges the original January 13, 1998 removal order.  If he is successful, then any subsequent reinstatements of that order cannot be

relied on to support an indictment for illegal reentry, including the September 9, 1999

reinstatement order used here. Id.

I.      **Exhaustion and Judicial Review**

Defendant had two opportunities to waive his right to appeal: first, when he signed the

"Request for Prompt Removal," and second, when he appeared before the IJ.  On December 31,

1997, Defendant signed the Request for Prompt Removal form and agreed to "waive appeal of

the decision ordering my deportation, exclusion, or removal." Def.'s Mem., Ex. G.

On January 13, 1998, Defendant appeared before an IJ.  At that hearing, the IJ first spoke

to the group through an interpreter, expressly noting the right to appeal, but indicating that any

other basis for avoiding deportation would be discussed individually with each defendant.  The IJ

explained:

> But even if the charges are valid, there are sometimes ways to avoid deportation. That
> depends on the facts of your case. Once I know more about the facts of your case, I will
> let you know if you are eligible to avoid deportation. . . . Should you disagree with my
> [ultimate] decision, you have the right of appeal. Now, the word appeal is a legal word.
> But what is means is to ask a higher court to review the facts of your case again. And that
> higher court will decide whether I have applied the law correctly to your case or not.

Def.'s Mem., Ex. I at 1–2. The IJ then spoke to Defendant, individually: "Mr. Cervantes, did you

understand your rights, sir?" Defendant responded, "Yes, yes." Id.

After discussing Defendant's stipulated request for prompt removal, and without

mentioning Defendant's right to seek voluntary departure, the Judge asked:

> Judge: Do you understand what I said earlier about your right of appeal?
> [Defendant]: Si.
> Judge: Would you like to appeal my decision, or do you accept deportation?
> [Defendant, translated]: I accept the deportation.

Id. at 4.

The Government argues, relying on <u>Galcia-Gonzalez</u>, that the signed Request for Prompt Removal form and Defendant's statements at the hearing satisfy its burden of showing a valid waiver. 997 F.2d at 604. Thus, the Government contends Defendant has the burden to prove the waiver was invalid. However, this argument is unpersuasive for two reasons.

First, where the defendant "lacked the benefit of legal representation" in the immigration proceeding, the Government cannot rely solely on the removal form to satisfy its burden. <u>Ramos</u>, 623 F.3d at 680. Here, Defendant was unrepresented both when he signed the Request for Prompt Removal form and at his hearing before the IJ. Therefore, the Government cannot rely solely on the Request for Prompt Removal form to satisfy its burden. <u>See</u> <u>id.</u> at 680–81.

Second, "an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." <u>Melendez-Castro</u>, 671 F.3d at 954 (quoting <u>United States v. Arrieta</u>, 224 F.3d 1076, 1079 (9th Cir. 2000)) (internal quotation marks omitted). This precludes the waiver of appeal from being "considered or intelligent." <u>Id.</u> In <u>Melendez-Castro</u>, the court exempted the defendant from the exhaustion bar because, during the deportation hearing, the IJ "summarily discussed voluntary departure" and "almost in the same breath . . . told him that he would not get the relief if he applied." <u>Id.</u> at 953–54.

The IJ at Defendant's hearing erred in two related, but distinct, ways. The IJ told the group that once the IJ learned of the facts regarding each individual's case, he would tell the individual if the individual was eligible to avoid deportation. With this, the IJ affirmatively represented that he would consider eligibility to avoid deportation on an individual basis and would inform each individual of such eligibility if the IJ found a basis for it after reviewing the relevant facts. The individual was left to assume that if the IJ did not mention eligibility to avoid

deportation, there was no basis to apply for it.  The IJ's failure to expressly inform Defendant of

his right to seek voluntary departure makes his earlier statement a misrepresentation.  Second,

the IJ also completely omitted any reference to the right to apply for voluntary departure.  Thus,

there was both an affirmative misrepresentation and an omission.  The failure to inform

Defendant of his right to apply for voluntary departure made any waiver of appeal by Defendant

"neither considered nor intelligent." See id. at 954. "The Due Process Clause of the Fifth

Amendment requires that an alien in an immigration proceeding 'be made aware that he has a

right to seek relief.'" Id. (quoting Arrieta, 224 F.3d at 1079).  Defendant was never apprised of

his right to seek voluntary departure; thus, his rights under the Due Process Clause were violated.

See Muro-Inclan, 249 F.3d at 1183 ("The exhaustion requirement of 8 U.S.C. § 1326(d) cannot

bar collateral review of a deportation proceeding when the waiver of a right to an administrative

appeal did not comport with due process.").

     The Government also argues Defendant's collateral attack must fail because the IJ found

his waivers were "voluntary, knowing, and intelligent." 8 C.F.R. § 1003.25(b).  Furthermore, the

Government  argues  that the cases relied on by Defendant applying a "considered and intelligent

standard" are applicable only where the alien is entitled to a full hearing before an IJ.

     The Government is mistaken in its conclusion that the two standards, "voluntary,

knowing, and intelligent" and "considered and intelligent," are both regulatory creations

applicable in different contexts.  The IJ's charge to ensure an alien's wavier is "voluntary,

knowing, and intelligent" is not a substitute for the "considered and intelligent" standard because

the two requirements are mandated by different protections, one by 8 C.F.R. § 1003.25(b) and

the other by the Due Process Clause.  See Ramos, 623 F.3d at 680–81, 683 (using "considered

and intelligent" as the standard for waivers implicating Due Process and "knowing, voluntary, and intelligent" as the standard "required by the regulation"); <u>Arrieta</u>, 224 F.3d at 1079.

Even assuming Defendant's waiver was "voluntary, knowing, and intelligent," his waiver must still satisfy due process. <u>See</u> <u>Ramos</u>, 623 F.3d at 677–80. In <u>Ramos</u>, the defendant entered into a stipulated removal that appeared to comply with the requirements in 8 C.F.R. § 1003.25(b). <u>Id.</u> at 677. Separate from the defendant's claims of invalid waiver of appeal and invalid waiver of his right to counsel, the court looked to see if the IJ could have concluded from the record that his waiver was "voluntary, knowing, and intelligent." <u>Id.</u> at 683. The court's determination that the IJ failed to comply with the regulation served as a separate ground for invalidating the underlying removal order. <u>Id.</u> at 683–84; <u>see also</u> <u>Reyes-Bonilla</u>, 671 F.3d at 1043 (holding invalid waiver satisfies the first two requirements under 8 U.S.C. § 1326(d)). Defendant's waivers are invalid because they were given in violation of his due process rights. It is immaterial whether the IJ found the waivers "voluntary, knowing, and intelligent."

Defendant could not validly waive his right to appeal because he was never informed of his eligibility for voluntary departure. For that reason, Defendant's waiver is invalid. Thus, the first two requirements of 8 U.S.C. § 1326(d), exhaustion and judicial review, are satisfied. <u>See</u> <u>Reyes-Bonilla</u>, 2012 WL 360771, at *4.

## II. **Fundamental Unfairness and Prejudice**

The final requirement, fundamental unfairness, is satisfied where there is both a violation of an alien's due process rights and evidence the alien "suffered prejudice as a result of the defects." <u>Ramos</u>, 623 F.3d at 680. As discussed above, Defendant has already established a violation of his due process rights because he was not informed of his right to seek voluntary departure. However, Defendant must also show "that he had a plausible ground for relief from

deportation"; essentially, that it was plausible he would obtain a voluntary departure.  See
Ubaldo-Figueroa, 364 F.3d at 1050; Melendez-Castro, 671 F.3d at 954.

Voluntary departure is categorically denied only to those convicted of an aggravated
felony or those involved in terrorism-related activities.  Ortiz-Lopez, 385 F.3d at 1205 n.3.
Aggravated felony is defined in 8 U.S.C. § 1101(a)(43) and includes:

> (B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21),
> including a drug trafficking crime (as defined in section 924(c) of Title 18);
>
> ***
>
> (F) a crime of violence (as defined in section 16 of Title 18, but not including a purely
> political offense) for which the term of imprisonment [is] at least one year;
>
> Id.

Defendant pleaded guilty to Possession of a Controlled Substance, O.R.S. § 475.992, a
Class B Felony and Assault in the Fourth Degree, O.R.S. § 163.160, a Class A Misdemeanor.
Gov't Opp'n, Ex. 2; Def.'s Mem., Ex. E.  The categorical approach is used to determine if a
state law conviction is an aggravated felony under 8 U.S.C. § 1101(a)(43).  See Pelayo-Garcia v.
Holder, 589 F.3d 1010, 1012 (9th Cir. 2009) (citing Shepard v. United States, 544 U.S. 13, 20–
21 (2005); Taylor v. United States, 495 U.S. 575, 600–02 (1990)).  "Under the categorical
approach, we 'compare the elements of the statute of [a] conviction with a federal definition of
the crime to determine whether conduct proscribed by the statute is broader than the generic
federal definition.'"  Cerezo v. Mukasey, 512 F.3d 1163, 1166 (9th Cir. 2008) (quoting Quintero-
Salazar v. Keisler, 506 F.3d 688, 692 (9th Cir. 2007)).  "[A] state drug offense is not an
aggravated felony for immigration purposes unless it would be punishable as a felony under the .
. . federal drug laws . . . or is a crime involving a trafficking element."  Ortiz-Lopez, 385 F.3d at
1205 (quoting Cazarez-Gutierrez v. Ashcroft, 382 F.3d 905 (9th Cir. 2004)).

There is no controlling precedent classifying Defendant's convictions as aggravated felonies. Cf. Guardiola-Hernandez v. Holder, No. 06-75444, 2009 WL 305949, at *1 (9th Cir. Feb. 9, 2009) (classifying *delivery* of a controlled substance under O.R.S. § 475.992 as an aggravated felony). Furthermore, the Government makes no argument otherwise. Thus, Defendant was not statutorily barred from voluntary seeking departure.

In determining if it was plausible Defendant would have been granted voluntary departure, the court must look at the "positive equities that could be considered in deciding whether to grant" the relief sought. See Melendez-Castro, 671 F.3d at 955. The IJ may consider the following favorable factors when determining if an alien should be granted voluntary departure:

> family ties within the United States; residence of long duration in this country, particularly if residence began at a young age; hardship to the petitioner or petitioner's family if relief is not granted; service in the United States armed forces; a history of employment; the existence of business or property ties; evidence of value and service to the community; proof of rehabilitation if a criminal record exists; and other evidence attesting to good character.

Campos-Granillo v. I.N.S., 12 F.3d 849, 852 n.8 (9th Cir. 1993). Unfavorable factors include:

> the nature and underlying circumstances of the exclusion or deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident.

Id.

In Ubaldo-Figueroa, the court considered the defendant's substantial family ties, a citizen wife and two citizen children, gainful employment, and active role in his children's upbringing in concluding the defendant had a plausible claim for relief. 364 F.3d at 1051. In Vasallo-Martinez, despite the defendant's four DUI convictions, the court found relief "plausible" because he had been in the United States for at least 21 years, he owned his own automotive business, and he

had a citizen wife and child.  United States v. Vasallo-Martinez, 360 F. App'x 731, 732–33 (9th Cir. 2009).

In this case, Defendant came to the United States in 1980, at the age of nine.  Def.'s Mem., Ex. B.  Defendant became a temporary resident in 1987, Id., and in 1989 he became a lawful permanent resident.  Def.'s Mem., Ex. D.  After completing the 10th grade, Defendant worked for the Duckwell-Pulley Fruit Company and then worked construction in Hood River, Oregon.  Def.'s Mem. 3.  Defendant's immediate family resides in the United States and at the time of his removal his two citizen children would have been under the age of eighteen.  Id.  At the time of removal, Defendant had pleaded guilty to Possession of a Controlled Substance and Assault IV.  Def.'s Mem., Ex. E.

At oral argument, the Government conceded that Defendant was eligible for voluntary departure at the time of his January 13, 1998 removal.  Defendant had resided in the United States for at least sixteen years and had been a lawful permanent resident for almost ten years. He had a wife and two minor children.  See Campos-Granillo, 12 F.3d at 852 n.8 (A positive factor is "hardship to the petitioner or petitioner's family if relief is not granted.").  Additionally, much of his extended family resided in the United States.  Finally, even though Defendant had pleaded guilty to two crimes, they were relatively minor compared to the convictions of other aliens granted voluntary departure.  See Vasallo-Martinez, 360 F. App'x at 732–33 (citing several Board of Immigration Appeals decisions affirming departure even where the alien had four assault convictions, and another where the alien had six criminal convictions, including battery and DUI).

If Defendant had been apprised of his eligibility for voluntary departure, I conclude it is plausible voluntary departure would have been granted.  Defendant has satisfied the three

requirements for collateral attack under 8 U.S.C. § 1326(d).  The original January 13, 1998

removal order is invalid and under <u>Arias-Ordonez</u>, the subsequent reinstatements of that original

removal order, including the September 9, 1999 reinstatement order upon which the present

indictment is based, may not be used as an independent foundation for an illegal reentry charge.

## III.    Plea Agreement

A prior plea agreement can preclude a defendant's collateral attack by acting as a

separate, valid waiver.  <u>Cf.</u> <u>United States v. Leniear</u>, 574 F.3d 668, 672 n.3 (9th Cir. 2009).

However, "[t]he scope of a knowing and voluntary waiver is demonstrated by the express

language of the plea agreement."  <u>United States v. Anglin</u>, 215 F.3d 1064, 1066 (9th Cir. 2000).

"Plea agreements are generally construed according to the principles of contract law, and the

government, as drafter, must be held to an agreement's literal terms."  <u>Id.</u> at 1067 (citations

omitted).

As noted above, soon after his January 13, 1998 removal from the United States,

Defendant was apprehended while crossing the border into Arizona.  His original January 13,

1998 removal order was reinstated on January 28, 1998.  His charge of illegal reentry was

resolved in a March 31, 1998 plea agreement in which Defendant pleaded guilty and agreed, in

relevant part, to the following terms:

> In the event this plea agreement is accepted by the Court, the defendant agrees not to
> contest, either directly or by collateral attack, the reinstatement of the prior order of
> removal, deportation or exclusion.
>
> ***
>
> The defendant waives any and all motions, defenses, probable cause determinations, and
> objections which the defendant could assert to the information or indictment or to the
> Court's entry of judgment.

Gov't Opp'n, Ex. 1 at 3–4.

The Government argues that Defendant's waiver of his his right to directly or collaterally attack the reinstatement of the original January 13, 1998 removal order bars Defendant from challenging the present indictment.  I disagree.

The plain language of the plea agreement prevents Defendant from contesting "*the reinstatement* of the prior order of removal."  The Ninth Circuit has previously distinguished between the underlying removal order and the reinstatement of that order, holding, "[t]he reinstatement order . . . creates no new obstacles to attacking the validity of the removal order." Morales-Izquierdo v. Gonzales, 486 F.3d 484, 498 (9th Cir. 2007).  In that case, the defendant "ha[d] shown no violation of due process in the conduct of his reinstatement proceeding.  To the extent genuine issues of material fact exist with respect to his underlying removal order, this 'prior order . . . is not subject to being reopened or reviewed' during the course of the reinstatement process."  Id. (quoting 8 U.S.C. § 1231(a)(5)).

Here, Defendant agreed to an eight-month sentence in exchange for waiving his right to challenge the January 28, 1998 reinstatement order and its directive that he be promptly removed following the completion of his sentence.  The plain language of the plea agreement shows that he agreed to waive his rights as to that particular January 28, 1998 reinstatement only and did not waive his rights regarding any subsequent reinstatement orders, including the one forming the basis of the present indictment.  Thus, by the plea agreement's terms, Defendant may challenge the original January 13, 1998 removal order as he does here.

The plea agreement's language also waives any challenges Defendant might bring "to the information or indictment or the Court's entry of judgment."  Again, the language is limited to the indictment charging Defendant in the District of Arizona in1998.  It goes beyond the plea

agreement's plain meaning to construe the phrase "the information or indictment" to include any future indictments, including the one before this Court.

Because the Government is "held to the agreement's literal terms," Defendant's 1998 plea agreement does not bar his collateral attack of the January 13, 1998 removal order. See Anglin, 215 F.3d at 1067.

## IV.    Vacating the Removal Order

In addition to dismissing the indictment, Defendant requests that I vacate the 1998 removal order and direct the Immigration Court to re-open his case. However, 8 U.S.C. § 1252(a)(2)(C) divests jurisdiction from any court asked to "review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)." Defendant was originally subject to removal because he was convicted of a state law crime "relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i)(II); Def.'s Mem., Ex. E. Thus, I do not have jurisdiction to consider Defendant's request and I decline to do so. Cf. Beeman v. Napolitano, 2011 WL 1897931, at *2–3 (D. Or. May 17, 2011).

CONCLUSION

Defendant's motion to dismiss the indictment [#19] is GRANTED. Defendant's request that I vacate the previous removal orders and reopen his immigration case is DENIED.

Dated this __25th____ day of April, 2012.

/s/ Marco A. Hernandez_____
MARCO A. HERNANDEZ
United States District Judge